SCHULTZ, APPELLEE, v. ELM BEVERAGE SHOPPE, APPELLANT.

[Cite as Schultz v. Elm Beverage Shoppe (1988), 40 Ohio St. 3d 326.]

(No. 88-313—Submitted October 26, 1988—Decided December 30, 1988.

*Manchester, Bennett, Powers & Ullman Co., L.P.A.,* and *Thomas J. Travers, Jr.,* for appellee.

*Pfau, Pfau & Pfau* and *William E. Pfau, Jr.,* for appellant.

LOCHER, J. We are confronted in this appeal by a question which we have not heretofore addressed, *i.e.,* whether a store owner, store operator or his agent may be held liable in tort for injuries sustained by a customer during a robbery of the premises. Because we find that the conduct of the store clerk, David Wildes, was reasonable in light of the urgency of the situation, we reverse the court of appeals and hold that summary judgment was properly entered in favor of appellant in the case *sub judice.*

A person "who otherwise would be liable for a tort is not liable if he acts in pursuance of and within the limits of a privilege * * *." 4 Restatement of the Law 2d, Torts (1979) 355, Section 890. The term "privilege" denotes the existence of circumstances that justify, or excuse, conduct that would ordinarily subject the actor to liability. See 1 Restatement of the Law 2d, Torts (1965) 17, Section 10(1), and, generally, Prosser & Keeton on Torts (5 Ed. 1984) 108-110, Section 16. Conduct that would otherwise be actionable is held to be privileged as a matter of law where, under the circumstances, it furthers an interest of social importance. See Prosser & Keeton, *supra,* at 109.

There has been, and continues to be, a great public interest in the prevention of crime. To that end, the law recognizes that conduct undertaken for the purpose of preventing a felony is privileged under certain circumstances. As noted by one commentator:

"[A] private person may, if a felony has been actually committed, arrest a person on reasonable suspicion for the commission of the felony, and in case of the felon's escaping may prevent his escape even by killing if the felony was one of violence; and he may also interfere with such violence as is necessary to prevent the commission of the felony." (Footnote omitted.) Beale, Justification for Injury (1928), 41 Harv. L. Rev. 553, 557.

The privilege is expressed as follows in 1 Restatement of the Law 2d, Torts, *supra,* at 257-258, Section 143:

"(1) * * * [A] private person is privileged to use force against or to impose confinement upon another which is not intended or likely to cause death or serious bodily harm for the purpose of preventing any felony which the actor reasonably believes the other is committing or is about to commit if the actor reasonably believes that the commission or consummation of the felony cannot otherwise be prevented.

"(2) The use of force or the imposition of a confinement intended or likely to cause death or serious bodily harm is privileged if the actor reasonably believes that the commission or consummation of the felony cannot otherwise be prevented and the felony for the prevention of which the actor is intervening is of a type threatening death or serious bodily harm or involving the breaking and entry of a dwelling place."

Comment *b* to Section 143 expressly includes robbery among the felonies which may be prevented by means likely to result in death or serious bodily

harm. This privilege has been applied to protect stores from liability where customers have been injured as a result of actions taken by store owners, store operators or their agents against armed robbers. See, *e.g., Yingst* v. *Pratt* (1966), 139 Ind. App. 695, 220 N.E. 2d 276; *Schubowsky* v. *Hearn Food Store, Inc.*.(Fla. App. 1971), 247 So. 2d 484.

Nevertheless, the privilege is subject to a limitation where the otherwise tortious conduct is directed towards a third party rather than a felon:

"An act which is privileged for the purpose of protecting the actor from a harmful or offensive contact or other invasion of his interests of personality subjects the actor to liability to a third person for any harm unintentionally done to him only if the actor realizes or should realize that his act creates an unreasonable risk of causing such harm."[2] 1 Restatement of the Law 2d, Torts, *supra,* at 128, Section 75. See *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 285-286, 21 O.O. 3d 177, 179-180, 423 N.E. 2d 467, 470.

Thus, the acts of a store owner, store operator or his agent while coping with an armed robbery must not create an unreasonable risk of harm to customers or other third parties on the premises if the acts are to remain privileged.

A factor of great importance "[i]n determining whether the actor as a reasonable man should be aware that his act creates an unreasonable risk of causing an invasion of any of the third person's interests of personality * * *" is the "* * * exigency in which the actor is placed, though not due to the third person's conduct, with its attendant necessity of an almost instantaneous choice of * * * [action]." 1 Restatement of the Law 2d, Torts, *supra,* at 129, Comment *b.* See, also, 2 Restatement of the Law 2d, Torts (1965) 64, Section 296(1); *Noll* v. *Marian* (1943), 347 Pa. 213, 32 A. 2d 18; *Young* v. *Desert View Mgt. Corp.* (1969), 275 Cal. App. 2d 294, 79 Cal. Rptr. 848. Obviously, the occurrence of an armed robbery puts a store owner, store operator or his agent under severe stress. Under such circumstances, the acts of such a person are judged less harshly than they might otherwise be judged.

Accordingly, we hold that a store owner, store operator or his agent is not liable in tort for death or serious bodily harm resulting from an armed robbery of the premises, provided that the acts of such owner, operator, or agent are reasonable considering the urgency of the situation.

In the case at bar, appellant's premises was the subject of an armed robbery. Until the arrival of appellee, the only persons in the store were Wildes and the robbers. Taking these exigent circumstances into account, reasonable minds could only conclude that Wildes was not acting unreasonably when he shouted, "Run, run, call the cops," or "Call the cops, call the cops," upon seeing appellee enter the store. Thus, even if we assume that

---

[2] "Interests of personality" is defined by 1 Restatement of the Law 2d, Torts, *supra,* at 22, Chapter 2, Introductory Note, as follows:

"(1) the interest in freedom from harmful bodily contacts;

"(2) the interest in freedom from offensive bodily contacts;

"(3) the interest in freedom from apprehension of a harmful or offensive bodily contact;

"(4) the interest in freedom from confinement; [and]

"(5) the interest in freedom from disagreeable emotions."

this act was the proximate cause of appellee's injuries, neither Wildes nor appellant may be held liable therefor because the act was in pursuance of and within the limits of the privilege discussed above.

Because we find that summary judgment in favor of appellant was appropriate, we hereby reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.